UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 1:26-cr-00540 |
| v. | ) | |
| | ) | |
| RAJESH PATEL | ) | |

**DEFENDANT'S MOTION FOR RECUSAL AND REASSIGNMENT**

Defendant Rajesh Patel, by and through his attorney, Beau B. Brindley, respectfully moves for the recusal of the Honorable Steven C. Seeger under 28 U.S.C. § 455(a) and § 455(b)(1), and for reassignment of this matter through the Court's ordinary assignment procedures.

Mr. Patel is newly indicted and has yet to appear before Judge Seeger. He raises this issue at the outset because the Court's recorded statements about his counsel reveal a personal, extrajudicial assessment that should have no place in the adjudication of his case. In support, Mr. Patel states as follows:

## I The Court's own statements establish the basis for recusal

At a June 28, 2024 status hearing in *United States v. Nathaniel Evans*, No. 22 CR 263, Judge Seeger expressly invoked information about attorney Beau Brindley from outside that case. The Court announced that Mr. Brindley was wearing out his welcome in the federal courthouse, claimed knowledge of how other federal judges perceived him, and connected its treatment of him in the *Evans* case to what it had "heard generally." Exhibit 1, Transcript of June 28, 2024 Proceedings ("Tr."), 28:6–16, 29:20–24, 32:14–19.

The full transcript is attached as Exhibit 1 to this motion; citations refer to its printed page and line numbers.

The most revealing statement was explicit: "And everything I've seen from you in this case is consistent with what I've heard generally." Tr. 32:17–19. That statement identifies an outside source and the Court's adoption of the resulting adverse impression. The Court was evaluating counsel through the lens of information that was neither identified nor tested in the proceeding. It repeatedly demanded that counsel accept that adverse assessment and warned of consequences extending to counsel's standing in the Dirksen Federal Building. Tr. 27:18–25, 29:15–24, 32:14–21, 62:11–20.

Mr. Patel's motion rests on those statements and their implications for his own representation. A court may enforce its orders, inquire into a defendant's access to counsel, and criticize an attorney's demonstrated failures. That authority does not permit a judge to import unidentified adverse reports about an attorney into a criminal proceeding and use them to pronounce a general judgment about that attorney's credibility and fitness to appear in the courthouse. Judge Seeger should not have done so. The resulting concern is concrete: Mr. Patel's chosen advocate comes before a judge who has already announced an adverse assessment of him, grounded in part in outside information and expressed in terms that overtly transcend any particular client or case.

Section 455(a) requires recusal when impartiality might reasonably be questioned. It does not require Mr. Patel to wait for that concern to produce an adverse ruling in his newly indicted case. The *Evans* transcript supplies compelling grounds to conclude that the Court's hostility has become personal and threatens the fair evaluation of the defense Mr. Brindley will present. At a minimum, it establishes an objectively reasonable

appearance of that danger. Reassignment now will protect Mr. Patel's right to an impartial tribunal without requiring him to surrender his counsel of choice.

## II The highlighted passages show repeated reliance on matters outside Evans

The context of the *Evans* hearing is obviously relevant. Judge Seeger expressed concern that Mr. Evans had complained of insufficient attention from his attorneys. Tr. 4:20–25, 5:1–8. Mr. Brindley acknowledged missing the Court's May 9 order and apologized. Tr. 26:2–5, 27:2–12. Later, the Court emphasized that counsel had not met with Mr. Evans until June 26 despite the order to do so earlier, and Mr. Brindley acknowledged that failure. Tr. 39:21–25, 40:1–8. Mr. Patel does not ask this Court to adjudicate the correctness of those criticisms or to review the Evans case management orders. The issue is the Court's express departure from those matters into outside reports and a general condemnation of counsel.

The Court initially responded to counsel's reference to a junk folder by saying that the folder "is full of your performance," and described counsel as "leaving a trail of incompetence in this case." Tr. 26:12–19. Standing alone, those comments would present a different recusal question. However, the Court immediately and unmistakably broadened the discussion:

> "What do you think your reputation is in this building, Mr. Brindley, amongst the federal bench?" Tr. 27:18–19.

When Mr. Brindley answered that he believed he had a reputation as an excellent trial advocate, the Court instructed him to engage in "quiet reflection" about his reputation in the building. Tr. 27:20–25. It continued:

> "You should ponder what I am telling you about your reputation in this building. Your welcome mat in this building, Mr. Brindley, is getting worn very thin." Tr. 28:6–8.

The Court then characterized counsel's conduct across cases and judges:

> "The way you conduct yourself in this building in case after case in front of judge after judge is not appropriate. It is not appropriate." Tr. 28:12–14.

When counsel acknowledged that missing the order had caused problems, the Court explicitly rejected the suggestion that its criticism was confined to that issue: "It's not just the order we're talking about. We're talking about your performance in this case and how you conduct yourself in this building, Mr. Brindley." Tr. 29:6–9. The Court explained the basis of its broader warning:

> "Your welcome mat in the Dirksen Federal Building is getting worn thin. Because I'm pretty aware of the situation about how you're perceived by members of the federal bench in this building." Tr. 29:21–24.

Counsel said he was unaware of any outstanding issue elsewhere. The Court replied: "Well, that should tell you something. The fact that you're not aware of it is a problem." Tr. 30:5–8. Mr. Brindley explained that he had come to address the case before the Court, had no notice of the other matters, and was not addressing anything beyond that case. Tr. 30:10–15. Nevertheless, the Court returned to his general reputation and how he was perceived by the federal bench. Tr. 31:21–25, 32:1–3.

Pivotally, the Court expressly linked its criticism to counsel's credibility as an advocate: "You've got to have credibility at the podium. Because when you lose it, it's very hard to get it back." Tr. 32:6–8. It added that counsel needed to guard his credibility in the courthouse "because once it's gone, it's gone." Tr. 32:8–10. The Court then made the decisive connection between its assessment in *Evans* and information received elsewhere:

> "You don't seem to be taking at face value the fact that I'm telling you that your reputation in the federal courthouse may not be at the blue ribbon, gold star level. And everything I've seen from you in this case is consistent with what I've heard generally. I'm just going to leave it at that." Tr. 32:14–19.

These statements were accompanied by repeated expressions of personal frustration. The Court said it had "grown tired of your attitude" and "grown tired of your incompetence," warned that sanctions would "start raining down," and stated: "I can't deal with a lawyer who thinks the rules don't apply to him. I can't deal with a lawyer who marches to his own drum." Tr. 35:14–23. The sanction warnings arose in the context of compliance with orders. Their significance here is cumulative: they show the intensity of the hostility accompanying the Court's express reliance on outside reports.

Near the end of the hearing, the Court again demanded a "course correction" and again framed the consequences in courthouse-wide terms:

> "If you don't do a course correction, I'm concerned that things may not end great for you in the Dirksen Federal Building. Because you're really wearing out your welcome, and it's got to stop." Tr. 62:17–20.

The transcript does not identify the speakers, dates, or precise contents of the reports the Court had "heard generally." Moreover, they are inconsistent with many on the record commendations for excellence at trial, which the undersigned has repeatedly received from judges in this district. Mr. Patel therefore does not attribute particular statements to any other judge or allege an undisclosed conversation with a particular person. The evidence is Judge Seeger's own acknowledgment of outside information, his invocation of the views of other judges, and his use of that information to reinforce a sweeping adverse assessment of counsel, irrevocably impacting his assessment of the credibility of any position he presents from the podium. Those are recorded facts, not speculation about what might have occurred in chambers.

## III Seventh Circuit law requires an objective assessment of the risk to impartiality

Section 455(a) provides that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Seventh Circuit asks whether a reasonable, informed observer would perceive a significant risk that the case will be decided on something other than its merits. *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). The inquiry is objective and requires a risk substantially beyond the ordinary friction of litigation. *Id.* The question is how the situation appears to a thoughtful observer acquainted with the full circumstances, including the legitimate concerns that prompted the hearing.

Section 455(b)(1) separately requires disqualification for "a personal bias or prejudice concerning a party." Unlike the appearance inquiry under subsection (a), this ground requires compelling evidence of actual bias. *Hook*, 89 F.3d at 355. Mr. Patel invokes both provisions, while emphasizing that subsection (a) independently requires recusal even if the Court declines to find actual bias under subsection (b)(1).

*Liteky v. United States*, 510 U.S. 540, 554–56 (1994), supplies the governing distinction between ordinary judicial criticism and disqualifying prejudice. Judicial rulings and opinions formed from current or prior proceedings ordinarily do not require recusal. Even anger or stern admonishments may fall within permissible courtroom administration. *Id.* at 555–56. But remarks delivered in court may reveal an opinion derived from an extrajudicial source; and even without such a source, remarks may establish antagonism so profound that fair judgment is impossible. *Id.* at 555. The presence of an outside source is a significant factor, rather than an automatic rule of disqualification. *Id.* at 554–55.

*Hook* applies those principles in this Circuit. It rejected a claim built on adverse rulings, the judge's reaction to a recusal motion, and an unsupported effort to impute the judge's wife's opinions to him. 89 F.3d at 354–56. Here, the link is supplied by the judge himself. Judge Seeger said that what he saw in the case was consistent with what he had heard generally. Tr. 32:17–19. The motion thus presents the evidentiary connection missing in *Hook*: an expressed adverse opinion reinforced by acknowledged information from outside the proceeding.

Bias directed at counsel must also be connected to the client. In *United States v. Sykes*, 7 F.3d 1331, 1339–40 (7th Cir. 1993), the Seventh Circuit recognized that bias against an attorney can be imputed to a party in appropriate circumstances, but required concrete facts suggesting that the hostility might extend to the client. *Sykes* rejected conclusory allegations under § 144. Mr. Patel proceeds under § 455 and relies on the Court's certified transcript, but he addresses the same substantive concern: the outside assessment attacks the credibility of the advocate through whom Mr. Patel must present his defense.

## IV The Court's reliance on unidentified outside reports requires recusal under Section 455

The extrajudicial character of the concern does not turn on where the Court spoke. A statement made from the bench can indicate an improper outside source. *Liteky*, 510 U.S. at 555. Nor does the fact that the remarks occurred in a different case, by itself, establish disqualifying bias. The critical feature is what Judge Seeger said about the basis and scope of his opinion: other judges' perceptions, counsel's reputation throughout the building, and information the Court had "heard generally." Tr. 27:18–25, 29:21–24, 32:14–19.

Those statements support the inference that the Court had adopted adverse information beyond its own adjudication of the matters before it. The Court did not identify an order from another case or a specific finding to which counsel could respond. It invoked a broad, unfavorable courthouse reputation, treated counsel's lack of awareness of this nonpublic information as another problem, and told him to accept the assessment at face value. Tr. 30:5–15, 32:14–21. Whatever the source's identity, the Court's blatant and admitted use of that information was impermissible. A criminal proceeding cannot become a forum for enforcing an unidentified consensus about the defendant's lawyer.

The Court's formulation also matters. It described the events in *Evans* as consistent with its outside information. Tr. 32:17–19. That is evidence that the external assessment was influencing the framework through which it viewed counsel's conduct. The reasonable concern is that the same assessment will carry forward when Mr. Brindley appears before Judge Seeger on behalf of Mr. Patel. Nothing about a new indictment in an unrelated case makes an already announced judgment about counsel's general credibility specific to the *Evans* case.

The Seventh Circuit's reasoning in *United States v. Atwood*, 941 F.3d 883, 884–86 (7th Cir. 2019), illustrates why the absence of a comment naming Mr. Patel is not dispositive. There, the judge's improper communications with the United States Attorney's Office did not explicitly mention Atwood's case. The government nevertheless conceded the appearance of partiality, and the court required resentencing before a different judge. *Id.* The communications and circumstances in *Atwood* were different, and no comparable communications with prosecutors are alleged here. Its

relevance is that an impartiality problem arising outside the defendant's own case can require reassignment when it bears on the participants through whom that case will be litigated.

The danger is especially serious where the Court must exercise discretion. As *Atwood* explained, the breadth of sentencing discretion creates a risk that personal biases will influence, or appear to influence, the result. *Id.* at 885–86. Mr. Patel's case has not reached sentencing, and he does not assume that it will. But his defense will require discretionary decisions throughout the proceedings. He is entitled to have those decisions made without a preexisting, externally reinforced judgment against the lawyer presenting his position.

The same concern animates *United States v. Figueroa*, 622 F.3d 739, 743–44 (7th Cir. 2010), a case addressing the use of extraneous considerations at sentencing. The Seventh Circuit vacated the sentence because the judge's extended, inflammatory discussion of matters outside the record undermined confidence that the decision rested on permissible factors. It could not determine how those considerations affected the sentence. *Id. Figueroa* was a sentencing decision, not a holding that every judicial digression requires recusal. Its reasoning nevertheless reinforces the point here: a court's legitimate business does not insulate its express reliance on irrelevant personal considerations. The effect of such considerations may be impossible to measure after the fact.

Mr. Patel should not be required to litigate his case under that uncertainty. The Court's assessment of counsel's supposed standing with unidentified members of the federal bench is wholly irrelevant to the allegations against Mr. Patel. It cannot properly

affect the reception of his motions, the evaluation of his counsel's representations, or the exercise of discretion in his case. Based on Judge Seeger's comments concerning Attorney Brindley's general credibility in the *Evans* hearing, it will do so here if Judge Seeger remains assigned to the case. Section 455(a) thus requires reassignment before those matters are decided.

## V The demonstrated hostility threatens Mr. Patel's defense through his counsel of choice

*Sykes* requires more than an assertion that the judge dislikes the lawyer. Here, the attached transcript provides more. Judge Seeger expressly placed "credibility at the podium" at issue, warned that lost credibility was difficult to recover, and coupled those observations with his acknowledgment of outside adverse information. Tr. 32:5–19. Counsel's credibility before the presiding judge is directly implicated when he explains the defense's position, describes discovery needs, makes factual proffers, or requests discretionary relief. A general determination that counsel lacks credibility creates a direct risk to the client whose interests counsel must advance.

The Court's warnings also extended beyond the case before it. "Case after case in front of judge after judge" and a worn-out welcome in the "Dirksen Federal Building" describe counsel's standing whenever he appears, not simply compliance with a particular deadline. Tr. 28:12–16, 29:21–24. The later warning that things might not "end great" for counsel likewise concerned the building as a whole. Tr. 62:17–20. Mr. Patel reasonably fears that this announced hostility will follow the same lawyer into his case and impact the impartial evaluation of the Court on any issues he advances through counsel.

This concern does not rest on the assumption that the Court will deliberately punish Mr. Patel for retaining Mr. Brindley. The appearance of compromised judgment is sufficient under § 455(a). An informed observer could reasonably conclude that Mr. Brindley's submissions will be evaluated through an established adverse view, and that the Court will treat further disagreement as confirmation of counsel's perceived deficiencies. In *Evans*, the Court repeatedly characterized counsel's failure to accept its reputational assessment as itself part of the problem. Tr. 29:15–19, 32:14–21. That dynamic threatens the independent advocacy Mr. Patel is entitled to receive.

The full context includes the Court's statements that it was protecting Mr. Evans's right to counsel and would respect his choice of attorney. Tr. 55:16–25, 56:1–12, 66:8–19. Mr. Patel does not omit those statements or contend that the Court actually removed Mr. Brindley in *Evans*. They do not answer the present motion. A sincere intention to protect a defendant does not eliminate the objective consequences of adopting outside reports about his lawyer or announcing that lawyer's diminished credibility. The question is whether the entire record creates a reasonable doubt about impartiality, and it does.

Mr. Patel's choice of counsel also cannot be treated as the problem to be corrected. The Sixth Amendment protects a defendant's qualified right to retained counsel of choice, subject to legitimate limits. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 151–52 (2006). That right does not exempt counsel from court rules, professional obligations, or appropriate discipline. But requiring Mr. Patel to change lawyers to avoid the consequences of judicial hostility would burden his own constitutional interest. The appropriate relief on this record is reassignment to a judge

who can assess his defense without the personal assessment of his counsel disclosed in Exhibit 1.

Personal hostility toward an attorney cannot be dismissed as irrelevant merely because the attorney, rather than the client, is its immediate target. The Seventh Circuit expressly recognizes that "bias against an attorney can reasonably be imputed to a party." *Sykes*, 7 F.3d at 1339. A defendant invoking that principle must identify facts suggesting that the prejudice against counsel might extend to the defendant. *Id*. at 1339–40. Mr. Patel's motion presents precisely that concern. The question is whether a reasonable observer, knowing the Court's statements about Mr. Brindley documented in Exhibit 1, would reasonably question whether Mr. Patel's arguments, representations, and requests for relief will receive impartial consideration when presented by that attorney. Section 455(a) requires recusal when the answer is yes.

The decisions of other federal courts of appeals demonstrate that hostility toward counsel can require disqualification, including when that hostility developed in earlier proceedings. In *Bell v. Chandler*, 569 F.2d 556 (10th Cir. 1978), the Tenth Circuit issued a writ compelling a district judge's disqualification in three civil actions based on a record that included the judge's personal conflict with the United States Attorney. The court examined the judge's conduct in previous cases involving that lawyer and expressly found that "[a]nimus toward [attorney] Burkett was there apparent." The court concluded that the prejudice was "personal rather than judicial" and that the government could not obtain a fair and impartial trial before the judge. Disqualification was therefore required under § 144 and, in the actions governed by the amended statute, § 455(a) and (b)(1). *Id*.

*Bell* rejects the premise that a judge's conflict with an attorney is necessarily separate from the interests of the attorney's client. An attorney presents the client's legal arguments, makes factual representations, addresses the Court's concerns, and asks the Court to exercise its discretion. A settled personal prejudice against that attorney can impair each of those functions. Nor does the commencement of a different case erase the problem. The significance of *Bell* is that the appellate court considered animus demonstrated in earlier proceedings when determining whether the judge could impartially preside over the cases then before him.

That reasoning applies with particular force to a newly indicted defendant who has not yet appeared before the Court. Mr. Patel has done nothing in these proceedings that could explain or justify an adverse predisposition toward his defense. Yet his chosen attorney enters the case burdened by the Court's previously expressed assessment of him. The concern is prospective and concrete: whether the Court will evaluate counsel's advocacy on its merits or through a preexisting judgment about counsel's character and credibility. Mr. Patel need not wait until that concern produces an adverse ruling before invoking a statute designed to prevent proceedings from occurring under an objectively reasonable appearance of partiality.

*Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993), further illustrates the danger. There, the district judge questioned an attorney's candor and invoked an unfavorable experience with the same attorney in another case. The Third Circuit required disqualification and reassignment based on the entire record, including apparent prejudgment, accusations of bad faith that encompassed counsel's clients, and

the judge's personal response to the recusal controversy. The court did not find actual bias. It concluded that the judge's impartiality could reasonably be questioned. *Id*.

The distinction matters here. Mr. Patel does not have to establish what the Court privately believes or prove that the Court consciously intends to disadvantage him. Section 455(a) protects the appearance of impartial adjudication as well as its reality. *Alexander* also demonstrates why criticism nominally directed at counsel cannot always be confined to counsel. When an attorney's supposed shortcomings become the framework through which the Court views the litigation, the client is drawn into the controversy and bears its consequences.

The extrajudicial component of the present record makes that concern especially serious. Mr. Patel's argument is not that every unfavorable impression formed in another judicial proceeding requires recusal. The argument instead concerns the Court's invocation of information about Mr. Brindley originating outside the case, together with the personal and generalized character of its condemnation, as documented in Exhibit 1.

A judge's identification of a particular deficiency in an attorney's performance is one thing. Reliance on outside assessments of the attorney's reputation as confirmation of a broader adverse judgment presents a different problem. Such commentary reasonably suggests that the Court's assessment is not confined to the conduct before it and will not necessarily remain confined to the case in which the comments were made. For Mr. Patel, whose prosecution is only beginning, the resulting concern is that his counsel arrives already discredited. That is the connection between prejudice against counsel and prejudice to the client that *Sykes* requires.

Even if the Court characterizes the challenged statements as arising entirely from judicial proceedings, that characterization does not end the inquiry. In *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 904–05 (8th Cir. 2009), the Eighth Circuit required reassignment after finding a sufficiently high degree of antagonism in the district court's treatment of the plaintiffs and their counsel. The record included repeated profanities, restrictions on the plaintiffs' opportunity to respond, and acceptance of the opposing party's inaccurate characterization of discovery orders. Although the recusal motion was untimely, the appellate court exercised its reassignment authority under § 2106 and expressly applied the § 455(a) appearance-of-partiality standard. Id. The court acknowledged the absence of an extrajudicial source but nevertheless held that reassignment was required. Id.

*Sentis* therefore confirms that the source of the hostility is not a categorical defense to recusal. The nature, severity, and context of the hostility remain decisive. Here, the Court must consider its comments collectively, including their reliance on information beyond the pending proceeding and their implications for Mr. Brindley's ability to advocate effectively for a new client.

These authorities do not establish that every disagreement between a judge and an attorney requires disqualification. Rather they demonstrate that personal animus toward counsel can become a threat to impartial adjudication, that the threat can carry into subsequent litigation, and that an objectively reasonable appearance of partiality is sufficient under § 455(a). Mr. Patel should not be required to litigate his newly commenced prosecution under that cloud. The Court should recuse itself and permit this case to proceed before a different judge.

## VI Recusal is warranted before the case proceeds beyond arraignment

Mr. Patel presents this motion at the commencement of his case, before his arraignment and before his first appearance before Judge Seeger. He does not seek relief from an unfavorable merits ruling or a second opportunity to litigate an issue already decided. The relevant concern is the Court's announced assessment of the attorney who will now represent him, expressed as a continuing problem extending throughout the courthouse.

The statute expressly includes pretrial proceedings within its reach. 28 U.S.C. § 455(d)(1). There is no reason to await a contested ruling or a completed trial before addressing a demonstrated basis to question impartiality. Reassignment now avoids requiring a successor judge to revisit substantive decisions and protects confidence in the case from its beginning.

The due process principles invoked by this motion reinforce that result. A fair tribunal is a basic requirement of due process. *In re Murchison*, 349 U.S. 133, 136 (1955). The constitutional inquiry into an intolerable probability of bias is objective, and a judge's sincere belief in his own impartiality does not end it. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009). Mr. Patel submits that the demonstrated antagonism toward the advocate through whom he must defend himself presents that constitutional concern as well. The Court need not reach the constitutional threshold, however, because § 455(a) supplies an independent and sufficient ground for relief.

The Court should decide the motion before substantive contested proceedings and reassign the case through the ordinary procedures upon recusal. Mr. Patel does not seek assignment to a particular judge. He seeks the impartial adjudication that the recusal statute guarantees.

**CONCLUSION**

The *Evans* transcript documents an express reliance on information outside the case, a broad adverse assessment of counsel's standing and credibility, and repeated warnings that his welcome in the federal courthouse was wearing thin. Those considerations have no legitimate place in Mr. Patel's prosecution. A newly indicted defendant should not enter his first appearance bearing the consequences of a judge's personal hostility toward his chosen attorney. For these reasons, Mr. Patel respectfully requests that Judge Seeger recuse himself pursuant to 28 U.S.C. § 455(a) and § 455(b)(1), and that this matter be reassigned through the Court's ordinary assignment procedures. The undersigned has shared the contents of this motion and the attached transcript with government counsel. Government counsel indicates that the government takes no position on this matter.

Respectfully submitted,

RAJESH PATEL

By: s/Beau B. Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 750
Chicago, Illinois 60604
(312) 765-8878